# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| JEREMY JAY WOODY, | : |
| Plaintiff, | : |
| VS. | : |
| | : NO. 5:18-CV-419-MTT |
| DONNA SPIRES; | : |
| WINNIE COLBERT; | : |
| SONYA HOLLAND; | : |
| KENNETH MANTLE, | : |
| Defendants. | : |

## ORDER

Plaintiff Jeremy Jay Woody alleges a Fourteenth Amendment over-detention claim. He states he was wrongfully incarcerated for seventy-two days past his maximum release date. Doc. 18 at 1. The Defendants move to dismiss Woody's action for failure to state a claim. Doc. 29. They argue that (1) Woody has failed to allege facts showing any Defendant was subjectively aware of the over-detention, Doc. 29-1 at 5-10; (2) he has failed to state a claim for supervisory liability against Sonya Holland and Kenneth Mantle, Doc. 29-1 at 10-13; and (3) all Defendants are entitled to qualified immunity, Doc. 29-1 at 13-17. The Defendants' motion to dismiss is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Woody is deaf and communicates using American Sign Language ("ASL"). Doc. 18 at 1-2. He does not speak and is unable to "read lips." *Id*. at 2. While Woody can

communicate simple information in written English, he requires an interpreter to effectively communicate with others who are not proficient in ASL. *Id*.

Woody re-entered[1] the Georgia Department of Corrections' ("GDOC") custody in August 2013. *Id*. at 1. GDOC officials informed him that his maximum release date was October 7, 2017. *Id*. at 3. This was incorrect. *Id*. GDOC officials failed to give Woody credit for the time he spent in county jail. *Id*. at 1. Woody's correct maximum release date was June 7, 2017. *Id*.

On August 18, 2017, GDOC apparently discovered its error and notified Woody, via a handwritten note, that he was being released that day. *Id*. at 4. Woody, who had received no preparation for release or re-entry planning, requested a bus ticket to Atlanta because he had family and friends there. *Id*. at 1, 4. The bus to Atlanta had already departed for the day, so officers placed him on a bus headed to Athens, Georgia. *Id*. at 4. Woody knew no one in Athens, had no housing in place, and had no identification with him. *Id*. at 5. Woody ended up homeless in Athens, Georgia. *Id*. at 4.

Woody alleges he did not learn that he was incarcerated beyond his maximum release date until 2018 when he commenced discovery in a separate action, *Woody v. Bryson*, 5:16-cv-467-MTT (M.D. Ga.). *Id*. at 1-2.

Woody alleges that Defendants Donna Spires, Winnie Colbert, Sonya Holland, and Kenneth Mantle are all current or former employees of Offender Administration, which is the GDOC department responsible for ensuring that inmates are not detained

---

[1] Apparently, Woody was incarcerated from May 13, 2009 through January 11, 2011 and from August 19, 2013 through August 18, 2017. Doc. 29-1 at 3, n. 4.

2

beyond their maximum release date. *Id*. at 2-3, 5-6. Mantle is the Manager of Offender Administration. *Id*. at 3, 6. Spires is the Jail Coordinator who determined a maximum release date for Woody on August 14, 2013. *Id*. at 3, 5. Colbert, who is currently retired from GDOC, determined a maximum release date for him on May 6, 2009. *Id*. Holland, who is the Offender Processing Manager in Offender Administration, had the responsibility for ensuring that Woody was given credit for the time he spent in the county jail. *Id*. Woody alleges that Spires, Colbert, and Holland "were plainly incompetent, and acted maliciously, intentionally, and in reckless disregard with deliberate indifference to . . . Woody's constitutional rights." *Id*. at 7.

Woody alleges that his over-detention and emergency release were not isolated occurrences. *Id*. at 7. Instead, he states there have been numerous over-detentions in recent years due the Offender Administrations' sentence computation errors. *Id*. According to Woody, Defendants Holland and Mantle were on notice of a pattern of over-detention but failed to intervene and failed to train and supervise the employees responsible for calculating inmates' sentences. *Id*. at 7-8. Woody alleges that Holland and Mantle have, with deliberate indifference, maintained "an unlawful policy or custom of imposing unlawful detention through sentence miscalculations and the failure to correct such miscalculations." *Id*. at 8.

Woody seeks damages.[2] Woody was not incarcerated at the time he filed this action. The Prison Litigation Reform Act, therefore, does not apply.

---

[2] The Defendants argue that Woody cannot pursue claims for money damages against the Defendants in their official capacities. Doc. 29-1 at 15. Woody agrees and clarifies that he "is not seeking damages against [the] Defendants in their official capacit[ies]—only in their individual capacities." Doc. 30 at 16.

Defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss Woody's first amended complaint.

**II. DISCUSSION**

A. Standard of Review

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted).

If there are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claims alleged in the complaint, the claims are "plausible" and the motion to dismiss should be denied and discovery commenced. *Twombly*, 550 U.S. at 556. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted).

The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

      B. <u>Alleged Failure to State a Fourteenth Amendment Claim Upon Which Relief May Be Granted</u>

"Under Georgia law, a trial court need not mention credit for time served in incarceration in its sentence because the credit will be computed and applied by the pre-sentence and post-sentence custodians. The GDOC has a duty to award credit for time served prior to trial." *Kelley v. Ga. Dep't of Corr.*, 145 F. App'x 329, 330-31 (11th Cir. 2005) (citing *Johnson v. State*, 248 Ga. App. 454, 456, 546 S.E.2d 562, 564 (2001) and *Warren v. State*, 246 Ga. App. 894, 895, 543 S.E.2d 38, 39 (2000)). Woody alleges GDOC officials failed to give him credit for time served in county jail, and the resulting seventy-two-day over-detention violated his substantive due process rights under the Fourteenth Amendment to the Constitution. Doc. 18. The Due Process Clause of the Fourteenth Amendment guarantees the "right to be free from continued detention after it was or should have been known that the [prisoner] was entitled to release." *Cannon v. Macon Cty.*, 1 F.3d 1558, 1563 (11th Cir. 1993), *modified on other grounds*, 15 F.3d 1022 (11th Cir. 1994); *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980).[3] "A

---

[3] In *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

5

Fourteenth Amendment claim based on over-detention 'must meet the elements of common law false imprisonment and establish that the imprisonment worked a violation of [F]ourteenth [A]mendment due process rights.'" *Powell v. Sheriff*, 511 F. App'x 957, 961 (11th Cir. 2013) (quoting *Cannon*, 1 F.3d at 1562-63 (footnote omitted)).

To state a viable claim for false imprisonment, Woody must allege (1) an intent to confine; (2) acts resulting in confinement; and (3) his awareness of confinement. *Id*. In his first amended complaint, Woody alleges that the Defendants intentionally and actually wrongfully imprisoned him in Central State Prison from June 7, 2017 until August 18, 2017, and he was plainly aware of his confinement. Doc. 18. Thus, Woody has adequately alleged false imprisonment and it does not appear the Defendants dispute as much.

To state a due process violation, Woody must allege that the Defendants acted with deliberate indifference. "Deliberate indifference exists when a government official '(1) had subjective knowledge of a risk of serious harm; and (2) disregarded that risk; (3) by conduct that is more than mere negligence.'" *Powell*, 511 F. App'x at 961 (quoting *West v. Tillman*, 496 F.3d 835, 840 (11th Cir. 2009)). The Defendants argue that Woody has not alleged any Defendant was subjectively aware that he was being held beyond his maximum release date. Doc. 29-1 at 4-10. The Defendants state that they did not disregard Woody's due process rights and, at most, the miscalculation of his release date was the result of negligence, simple error, or mistake. *Id*. at 9. They state that as soon as they gained subjective knowledge of the unintentional miscalculation on August 18, 2017, they immediately released Woody. *Id*.

6

Defendants analogize Woody's case to numerous cases in which pro se plaintiffs complained of isolated instances of over-detention by jail or prison officials. These plaintiffs alleged that the officials were deliberately indifferent for failing to respond to the plaintiffs' complaints about the over-detentions. The district courts dismissed the complaints, either pursuant to Fed. R. Civ. P. 12(b)(6) or 28 U.S.C. § 1915A, because the plaintiffs failed to allege any facts showing that officials knew, or should have known, that the plaintiffs were illegally detained. Instead, the plaintiff's factual allegations "at most, constitute[d] negligence." *Williams v. Williams*, 2010 U.S. Dist. LEXIS 51842, at *14 (M.D. Ala. 2010). These cases stand for the general proposition that "merely receiving a plaintiff prisoner's release order and erroneously processing that order is insufficient to state a Fourteenth Amendment over-detention claim, even if the plaintiff makes general protests of the over-detention to the defendants."[4] *Id*. at *13-14 (citations

---

[4] *Burch v. Atlanta City Ct.*, 729 F. App'x 914, 915 (11th Cir. 2018) (affirming district court's *sua sponte* dismissal of amended complaint because the plaintiff failed to "plead facts demonstrating [the] Defendants' failure to update their records went beyond mere negligence"); *Pritchett v. Bates*, 2013 U.S. Dist. LEXIS 102443, at *13 (S.D. Ala) (holding the plaintiff's pro se complaint did "not contain information indicating [the Sheriff] had knowledge of the dismissal order and then disregarded the order in a manner that is greater than negligence"), *adopted by Pritchett v. Bates*, 2013 U.S. Dist. LEXIS 102442 (S.D. Ala 2013); *Squires v. St. Lawrence*, 2009 U.S. Dist. LEXIS 129276, at *4 (S.D. Ga.) (holding the plaintiff's pro se complaint failed to "allege[] any facts showing that the Sheriff . . . had any knowledge or reason to know of the dead-docketing of his case yet remained deliberately indifferent to his continued detention"), *adopted by Squires v. St. Lawrence*, 2009 U.S. Dist. LEXIS 60805 (S.D. Ga. 2009); *Twyman v. Ala. Dep't of Corr.*, 2018 U.S. Dist. LEXIS 169324, *7 (M.D. Ala.) (holding pro se plaintiff "pleaded facts from which the court conceivably might infer negligence by claiming his jailers did not properly investigate his claims that he has no undischarged time remaining on his sentence"), *adopted by Twyman v. Ala. Dep't of Corr.*, 2018 U.S. Dist. LEXIS 177464 (M.D. Ala. 2018); *White v. Dekalb Cty.*, 2015 U.S. Dist. LEXIS 184107, at *4-5 (N.D. Ga.) (stating that "[p]laintiff's allegations suggest that his continued confinement resulted from negligence . . . ."), *adopted by White v. Dekalb Cty.*, 2015 U.S. Dist. LEXIS 184106 (N.D. Ga. 2015), *affirmed White v. DeKalb Cty*, 665 F. App'x 795 (11th Cir. 2016); *Lyles v. Talbot Cty. Super. Ct. Clerk*, 2019 U.S. Dist. LEXIS 2846, at *6 (M.D. Ga. 2019) (holding pro se plaintiff's "confusing and disjointed" allegations fail to show superior court clerk knew unspecified documents contained incorrect sentence); *Dorminey v. Crosby*, 2007 U.S. Dist. LEXIS 22423, at *20 (M.D. Fla.) (granting motion to dismiss two supervisory officials because pro se complaint failed to allege causal connection between over-detention and officials' actions but declining to grant summary judgment for third defendant who had actual knowledge of court order requiring immediate release), *summary judgment granted by Dorminey v. Crosby*, 2007 U.S. Dist. LEXIS 22423, at *15-16 (M.D. Fla. 2007) (granting renewed motion for summary judgment only after new affidavit submitted stating that court order requiring release was not ignored).

omitted) (finding that the pro se complaint did not allege the defendants received the "written *nolle prosequi* order that entitled [p]laintiff to be released from jail").

But the allegations in Woody's first amended complaint differ significantly from the allegations in the cases on which the Defendants rely. Woody does not allege that his was an isolated instance of over-detention, and the Defendants were deliberately indifferent for failing to correct the situation once he brought it to their attention. Instead, he alleges the Defendants knew, or should have known, that they were unlawfully detaining dozens of inmates each year, yet they did nothing to remedy the situation. Doc. 18 at 2, 5-8. Specifically, he states that all of the Defendants work for the Offender Administration, which calculates the release dates for all Georgia prisoners. *Id*. at 3, 7-8. Based on sworn testimony taken from *Woody v. Perry*, 5:18-cv-467-MTT (M.D. Ga.), Woody alleges that Offender Administration miscalculated the release dates for five prisoners at one institution between October 2016 and September 2018 and GDOC has thirty-three institutions. *Id*. at 6. Reasonably inferring from these facts, the Defendants may have miscalculated the release dates for more than eighty prisoners each year for the two years immediately preceding Woody's over-detention and emergency release.

Woody alleges that despite their knowledge of the pattern of over-detentions, the Defendants failed to take any remedial steps to correctly recalculate his release date during the four years he was incarcerated. *Id*. at 7. Woody alleges the Defendants' conduct went beyond mere negligence. *Id*. He states that the Defendants "acted maliciously, intentionally, and in reckless disregard . . . with deliberate indifference" when they disregarded the widespread, systemic failure to properly calculate maximum

8

release dates. *Id*. at 7. Thus, Woody alleges that the Defendants were deliberately indifferent to repeated, documented over-detentions occurring throughout the prisons and failed to take any remedial steps to mitigate the risk of over-detention. *Id*. at 2, 5, 7-8.

Given these allegations, Woody has sufficiently alleged that the Defendants had subjective knowledge of the risk of over-detention, they disregarded the risk, and their conduct rose above mere negligence. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (finding subjective knowledge may be shown by circumstantial evidence suggesting "longstanding, pervasive, well-documented" problem to which Defendants had been exposed and thus "must have known") (internal quotation marks and citations omitted).

This finding merely means the Court cannot grant the Defendants' motion to dismiss for failure to state a claim. The Defendants are free to move for summary judgment should discovery reveal the Defendants were not deliberately indifferent to Woody's continued incarceration "'after it was or should have been known that [he] was entitled to release.'" *Kelley*, 145 F. App'x at 330 (quoting *Cannon*, 1 F.3d at 1563).

C. Supervisory Liability

"Supervisory liability under section 1983 may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citation omitted). A causal connection can be established when (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"; (2) "a supervisor's custom or policy . . . result[s] in deliberate indifference

9

to constitutional rights"; or (3) the "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations and quotation marks omitted).

Woody alleges that Holland (1) "had responsibility for ensuring that he was given credit for the time he spent in county jail," Doc. 18 at 5; (2) was "responsible for the computational errors and unwarranted detention," *Id.* at 7; and (3) was "plainly incompetent, and acted maliciously, intentionally, and in reckless disregard and with deliberate indifference to . . . Woody's constitutional rights" when he failed to correct the sentence miscalculation during the four years Woody was incarcerated. *Id.* Thus, while Woody does not argue so in his response to the Defendants' motion to dismiss, it appears he has alleged Holland's "personal participation in the acts that comprise the constitutional violation." *H.C. by Hewett v. Jarrad*, 786 F.2d 1080, 1086 (11th Cir. 1986).

He also alleges that Holland and Mantle had a legally sufficient causal connection to the constitutional violation. Specifically, he states that Holland and Mantle (1) "were on notice of a pattern of unconstitutional wrongful detentions followed by emergency releases, and the need for their intervention"; (2) "failed to intervene and instead continued to permit the wrongful detentions to occur"; (3) failed to train and supervise the individuals responsible for accurately calculating and correcting miscalculations . . . despite knowing of a pattern of wrongful detention"; and (4) "have maintained, with

deliberate indifference, an unlawful policy or custom of imposing unlawful detention through sentence miscalculations." Doc. 18 at 7-8.

The Defendants argue that Woody fails to state a supervisory claim against Holland and Mantle because he "has not alleged any factual support for the conclusory assertions regarding the alleged failure to train and alleged deliberate indifference in maintaining an unlawful policy or custom." Doc. 29-1. They also argue that he as failed to show Holland and Mantle were on notice of the need to intervene and correct the over-detentions but failed to act.

The Eleventh Circuit has held that

> [o]nly when the failure to train amounts to "deliberate indifference" can it properly be characterized as the "policy" or "custom" that is necessary for section 1983 liability to attach. Failure to train can amount to deliberate indifference when the need for more or different training is obvious, such as when there exists a history . . . that has put the supervisor on notice of the need for corrective measures, and when the failure to train is likely to result in the violation of a constitutional right.

*Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1397-98 (11th Cir. 1994) (citations omitted). Woody alleges there may have been more than eighty over-detentions and emergency releases each year in the two years prior to Woody's over-detention. Doc. 18 at 6. Assuming this is true, the need for additional or different training would have been obvious to the supervisory Defendants.[5]

---

[5] In their reply brief, the Defendants "object" to Woody's citation to deposition testimony from *Woody v. Bryson*, 5:16-cv-467-MTT to allege the causal connection necessary to hold Holland and Mantle responsible for Woody's over-detention. Doc. 31 at 3 n.4 (citing Doc. 30 at 5 n.2). In the footnote about which the Defendants complain, Woody states that discovery in *Woody v. Bryson*, 5:16-cv-467-MTT revealed that Offender Administration is responsible for calculating release dates. Doc. 30 at 5 n.2. Woody alleged in his first amended complaint that Offender Administration was the "GDOC department responsible for ensuring that individuals are not wrongly detained beyond their maximum release dates." Doc. 18 at 6. He also alleged in his first amended complaint that discovery from *Woody v. Bryson*, 5:16-cv-467-MTT revealed numerous inmates were being wrongfully detained

11

Again, assuming this is true, Woody has sufficiently alleged that Holland and Mantle were on notice and failed to intervene. Docs 18 at 6-8. Defendants argue that over-detentions and emergency releases were isolated incidents that occurred only five times over approximately two years. Doc. 29-1 at 13. But Woody specifically alleges that what happened in his case "was not an isolated occurrence." Doc. 18 at 7. Instead, there were five over-detentions and emergency releases between October 2016 and September 2018 at only one institution. Doc. 18 at 6. According to Woody's complaint, "GDOC has 33 institutions." *Id*. Thus, if over-detentions and emergency releases occurred at approximately the same rate at each institution, there would have been more approximately eighty over-detentions and emergency releases per year between October 2016 and September 2018. Over-detentions at this rate would constitute a "'history of widespread abuse'" sufficient to put Holland and Mantle "'on notice of the need to correct the alleged deprivation.'" *Powell*, 511 F. App'x at 961 (citation omitted). But, according to Woody, they failed to do so.

Cases cited by the Defendants do not dictate that Holland and Mantle be dismissed at this stage in the litigation. In the three cases dismissed on the pleadings, the plaintiffs failed to allege any facts demonstrating the causal connection necessary to impose supervisory liability. *See Franklin v. Curry*, 738 F.3d 1246, 1249-51 (11th Cir. 2013) (pretrial detainee alleged officer sexually assaulted her but failed to allege any facts showing the supervisory officials were actually aware of the risk posed by the offending

---

beyond their maximum release date. *Id*. While the Defendants may "object" to these allegations, they have provided no argument or authority why the Court should not consider these factual allegations to be true for the purposes of ruling on the Defendants' Fed. R. Civ. P. 12(b)(6) motion.

officer); *Cottone*, 326 F.3d at 1360-61 (finding plaintiff failed to allege any facts to show supervisors had notice of the need for additional training or correction because supervisors had no notice of subordinates' failure to monitor suicidal inmates); *Tyre v. Carter*, 2017 U.S. Dist. LEXIS 73606, at *4-5 (S.D. Ga. 2017) (excessive force claim in which the plaintiff failed to alleged any previous instances of excessive force by the officer that would have given the sheriff "notice of any such instances" and failed to allege "any improper policies, practices, or customs" on the part of the sheriff). In this case, however, Woody alleges facts showing "a pattern of wrongful detention" of which Holland and Mantle were aware. Doc. 18 at 7-8. (alleging Holland and Mantle failed intervene, train, and supervise those responsible for calculating and correcting miscalculations in sentences despite knowing of a pattern of over-detentions).

The other cases cited by the Defendants were all resolved on motions for summary judgment following discovery.[6] Discovery in this case may reveal Woody's factual allegations regarding the number of over-detentions between 2016 and 2018 to be incorrect. Discovery might show Holland did not actually participate in Woody's over-

---

[6] *West*, 496 F.3d at 1329-32 (affirming grant of summary judgment to supervisory defendants because discovery reveled they were not aware of regular over-detentions prior to the plaintiff's over-detention and once they became aware of the problem, they took measures to investigate and correct the situation, such as hiring additional staff, implementing new computer programs, and offering additional training); *Hartley by Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir 1999) (finding district court erred in denying summary judgment to school superintendent); *Adams v. Poag*, 61 F.3d 1537,1545-46 (11th Cir. 1995) (reversing denial of summary judgment to supervisory doctor); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (affirming grant of summary judgment in favor of director of jail); *Clark v. Evans*, 840 F.2d 876, 885 (11th Cir. 1988) (relying on deposition of GDOC Commissioner to find he did not know about policy of disregarding committal orders, and relying on another GDOC employee's deposition to find there were only four or five committal orders disregarded in the past four years, which was not enough to put the GDOC Commissioner on notice); *Brown v. Smith*, 813 F.2d 1187, 1187 (11th Cir. 1987) (affirming grant of summary judgment to Warden); *Rogers v. Evans*, 792 F.2d 1052, 1058-63 (11th Cir. 1986) (affirming grant of summary judgment to supervisory defendants); *Powell*, 511 F. App'x 957, 960-62 (11th Cir. 2013) (affirming district court's grant of summary judgment because discovery revealed Sheriff took "significant corrective actions" to remedy "widespread over-detention problem[s]").

13

detention and it may reveal a lack of causal connection necessary to hold either Holland or Mantle liable. If that is the case, the Defendants may move for summary judgment at the appropriate time. But, at this stage in the litigation, the Court must accept Woody's factual allegations as true, and Woody has made sufficient allegations against Holland and Mantle to allow the claims against them to proceed through discovery.

### D. Qualified Immunity

The Defendants argue they are entitled to qualified immunity. "Under the doctrine of qualified immunity, government officials performing discretionary functions may not be held individually liable for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *West*, 496 F.3d at 1326 (quotation marks and citations omitted). The Court may "grant the defense of qualified immunity at the motion to dismiss stage if the complaint 'fails to allege the violation of a clearly established constitutional right.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)).

To receive qualified immunity, the Defendants must first prove they were acting within their discretionary authority. *Gonzalez*, 325 F.3d at 1234 (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1342 (11th Cir. 2002)). Woody "does not dispute, for purpose of this motion, that [the] Defendants were performing 'discretionary functions' when they over-incarcerated [him]." Doc. 30 at 15 n.13. The burden then shifts to Woody "to show that qualified immunity is not appropriate." *Gonzalez*, 325 F.3d at 1234 (citation omitted). The test for determining whether qualified immunity is appropriate is two

pronged. First the Court asks whether, "'[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [Defendants'] conduct violated a constitutional right?'" *Id*. (citation omitted). Next, "'[i]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.'" *Id*. (citation omitted).

As explained above, at this stage of the proceedings, Woody's factual allegations, taken as true, show that the Defendants violated his right to be free from continued incarceration after it was or should have been known that he was entitled to be released. Woody's complaint alleges a pattern of repeated over-detentions and alleges that the Defendants were aware of and deliberately indifferent to Woody's right to be timely released. Doc. 18-1 at 2, 5-8. Additionally, the underlying constitutional right for a prisoner to be released when his sentence has expired is clearly established. *Cannon*, 1 F.3d at 1562-63 (citations omitted) (discussing "[t]he constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to be release[d]"); *Douthit*, 619 F.2d at 532 (holding that "[d]etention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."); *McCurry v. Moore*, 242 F.Supp.2d 1167, 1178 (N.D. Fla. 2002) (citations omitted) (finding "[t]he underlying constitutional right" for a prisoner to be released when his sentence has expired is "well established"). The Court cannot, therefore, grant the defense of qualified immunity at the motion to dismiss stage in this case.

### III. CONCLUSION

Woody has adequately stated a claim for over-detention against the Defendants. Whether the Defendants were deliberately indifferent is a question of fact that requires discovery. All or some of the Defendants may, if appropriate, raise the issues of lack of deliberate indifference, failure to show supervisory liability, qualified immunity, and any other appropriate defense on a motion for summary judgment following this discovery. At this time, however, Defendants' motion to dismiss is **DENIED**.

**SO ORDERED** this 13th day of June, 2019.

S/Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT